STATE EX REL. WEBB, RELATOR, *v.* DISTRICT COURT ET
AL., RESPONDENTS.

(No. 2,547.)

(Submitted April 7, 1908.  Decided May 11, 1908.)

[95 Pac. 593.]

*Contempt—Attempt to Influence Jurors—Affidavits—Sufficiency*
*—Evidence—Accomplice—Supervisory Control.*

Contempt—Affidavits Charging—Sufficiency.
  1.  In the absence of some requirement in the statute (Code Civ.
  Proc., sec. 2172), prescribing the form in which a charge for con-
  tempt must be presented, a general statement, substantial enough to
  justify a conclusive inference of knowledge and intent in the con-
  temnor at the time it was alleged he attempted to willfully influence
  jurors, was sufficient to confer jurisdiction upon the district court.

Same—Affidavits—Intent.
  2.  While a contempt proceeding is criminal in its nature, and in a
  case of that character it is generally necessary to allege, in some way,
  the intent with which the unlawful act has been committed, yet where
  it appeared as a conclusive inference from the facts stated in the
  affidavits filed  that the contemnor intended to corruptly influence
  jurors, it was not necessary to specially allege the intent with which
  the act was done.

Same—Influencing Jurors.
  3.  An attempt to corruptly influence a member of a jury panel con-
  stitutes an unlawful interference with the proceedings of the court,
  and is punishable as a contempt, irrespective of whether such juror
  has been actually sworn to try a cause or not.

Same—Evidence—Sufficiency.
  4.  Evidence *held* sufficient to show an attempt on the part of a liti-
  gant to corruptly influence members of a jury panel. (BRANTLY,
  C. J., dissenting.)

Same—Accomplice—Corroboration.
  5.  A person through whom a litigant attempted to corruptly influ-
  ence a member of a jury panel, and who, while declining to act as
  intermediary, stated that he would not say anything to anybody, but
  that he would have to tell the prospective trial juror, with whom he
  was connected in a business way, so as to put him on his guard, was
  not an accomplice whose testimony it was necessary to corroborate be-
  fore the litigant could be found guilty of contempt. (BRANTLY, C. J.,
  dissenting.)

APPLICATION for writs of supervisory control and *certiorari*
to annul the judgment of the district court of Silver Bow
county, George M. Bourquin, judge presiding, in finding John
Webb guilty of contempt for unlawfully interfering with the

proceedings of the court by attempting to improperly influence certain jurors. Order to show cause discharged and judgment affirmed. (MR. CHIEF JUSTICE BRANTLY dissenting in part.)

*Mr. C. M. Parr,* and *Mr. John J. McHatton,* for Relator.

*Mr. H. A. Frank,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On March 25, 1908, there were filed in the district court of Silver Bow county, in department 2 thereof, the Honorable George M. Bourquin being the presiding judge, the four several affidavits which follow:

"Frank Boucher, being first duly sworn, on oath deposes and says: That he is the defendant in the above-entitled action, [John Webb, Plaintiff, v. Frank Boucher, Defendant.] That said action was commenced on or about the 18th day of June, 1907, by the filing of a complaint therein, and ever since has been, and now is, undisposed of, undetermined and pending in department 2 of the above-entitled court. That said action was originally set for March 7, 1908, for trial, and has been regularly continued from time to time to March 31, 1908.

"[Signed]    FRANK BOUCHER."

"L. J. Smith, being first duly sworn, on oath deposes and says, I am commonly called 'Smithie.' I am a hackman, and have my stand in front of P. C. Gillis' cigar store, on Main street, in the city of Butte, Mont. That C. H. Hickman is a member of the trial jury now in attendance on department 2 of the above-named court, and has been such juryman for more than four weeks last past. That said Hickman is also a hackman, and has his stand at the same place I have mine.

"Deponent further says that on Friday afternoon, on March 13, 1908, at about 5 o'clock P. M. on said date, John Webb came to me at my stand and said: 'Where is Hickman?' I

said: 'I don't know where he is. He is on a jury up there, and maybe he is not out yet.' I further said: 'What do you want? He and I are kind of partners here.' Webb then said: 'I want to see him. I understood he was on the jury. I have got a case coming up with Frank Boucher. I am suing him for $5,000, and I thought maybe Hickman could do something for me. That was all I wanted to see him about.' At this time we were talking about said Hickman. I then said to Webb: 'Hickman is a pretty square sort of a fellow in my opinion. If he happens to be on your jury, and he thinks you have anything coming to you, why you'll get it; otherwise, you won't.' Webb then said: 'Don't say anything about this to anybody.' I said: 'I won't to anybody except Hickman. Of course, I will have to tell Hickman.' Said Webb then said: 'Of course. It is just this way: I worked about five years over there. I put in them windows and doors. I have got this money coming to me, and Boucher is trying to beat me out of it; and if I get a verdict in my favor I'll make it right with him.' At this time we were talking about said Hickman. Webb further said: 'I am willing to make it right with any of the boys that stay with me.'

"Deponent further says that about this time said Hickman drove up, and I said to Webb: 'There is Hickman now. You can have a talk with him yourself; but,' I said, 'I don't think you can do anything with him, unless the evidence would make him feel that you are entitled to it.' I then left the said Webb, and had no further conversation with him, and immediately thereafter spoke to Hickman about the matter.

"Deponent further says that, during his conversation with said Webb (but at what particular part of it deponent does not now remember), said Webb asked this deponent to speak to said Hickman about the matter, and deponent told said Webb he had better see Hickman himself.

"[Signed]   L. J. SMITH."

"C. H. Hickman, being first duly sworn, on oath deposes and says: That he is a hackman, with a stand in front of P. C.

Gillis' cigar store, on Main street, in the city of Butte, Mont.,. and is well acquainted with, and to some extent connected in business with, L. J. Smith, commonly known as 'Smithie,' who is also a hackman, with a stand at the same place. That deponent is now, and has been for more than four weeks last past, a member of the regular panel of trial jurors in attendance upon department 2 of the above-named court. That said L. J. Smith came to me at said stand about 5 P. M., on March 13, 1908, and said: 'Do you know that fellow that was talking to me there?' I said: 'Yes.' Said Smith then said: 'He has a case coming up in Bourquin's court, and he said he would make it right with any of the boys who would stand with him.' Said Smith then told me that said Webb asked if I was all right, and said Smith answered that I was on the square, and that if he (said Webb) had any damages coming I would give them to him, and if he didn't I wouldn't.

"[Signed]    C. H. HICKMAN."

"W. Edgar Wright, being first duly sworn, deposes and says: That he is now and for more than four weeks last past has been a member of the regular panel of trial jurors in attendance upon department 2 of the above-entitled court. That on or about the 6th day of March, 1908, John Webb walked behind deponent and one Solveson from the Thornton Hotel, in the city of Butte, Mont., to P. C. Gillis' cigar store in said city. That at said last-mentioned place said Webb invited deponent to have a cigar, and then said, in substance, to deponent: 'You are on the jury. It must be tiresome work on the jury. I have a case coming up there, and I hope the boys will do the right thing by me.' Deponent then walked away from the said Webb, and had no further conversation with him.

"[Signed]    W. E. WRIGHT."

Thereupon the court issued a citation requiring John Webb,. the relator, to show cause why he should not be adjudged guilty of contempt for unlawfully and willfully interfering with the proceedings of the court by attempting improperly to influence Jurors Hickman and Wright, then in attendance upon the

court. The relator, having appeared by his counsel at the appointed time, entered a plea of not guilty. After hearing the evidence, the court found him guilty, and sentenced him to imprisonment in the county jail for five days, and to pay a fine of $200, with additional imprisonment until the fine should be paid or satisfied. Thereupon application was made to this court for writs of supervisory control and *certiorari* to annul the judgment, the grounds of the application being (1) that the affidavits upon which the conviction is founded do not state sufficient facts to show a contempt; and (2), assuming that they do, that the evidence is insufficient to justify conviction. The theory upon which application was made for both writs is that, while upon *certiorari* the court may determine the question of jurisdiction arising upon the sufficiency of the allegations contained in the affidavits, it may not, upon the review afforded by this writ, examine the evidence to determine its sufficiency to sustain the finding and judgment. Hence, following the course pursued in *State ex rel. Sutton v. District Court,* 27 Mont. 128, 69 Pac. 988, the supervisory power of the court was invoked to determine this question, in case the conclusion was reached that the district court had jurisdiction.

Section 2170 of the Code of Civil Procedure provides: "The following acts or omissions, in respect to a court of justice, or proceeding therein, are contempts of the authority of the court." The first eight subdivisions of the section enumerate various specific things which are contempts. Some of these are direct, while others are indirect or constructive, contempts. Subdivision 9 reads: "Any other unlawful interference with the process or proceedings of a court." This includes acts other than those enumerated in the preceding subdivisions, whether done in the presence of the court or not. The acts charged here constitute an indirect contempt, for they did not occur in the presence of the court.

It is said that the affidavits are not sufficient in form to state a contempt, in that nowhere in them is it alleged that the acts

done were done with intent then and there unlawfully to interfere with the proceedings of the court. A sufficient answer to this·contention is that the statute does not require the affidavit to be drawn in strict conformity with the rules of criminal pleading, as in case of informations or indictments. Section 2172 of the Code of Civil Procedure declares: "* * * When the contempt is not committed in the immediate view and presence of the court, or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators or other judicial officer." This provision does not prescribe any form, nor require any characterization, of the act charged as a contempt in order to confer jurisdiction. It merely requires a statement of the facts constituting the contempt. In the absence of some requirement of statute prescribing the form in which the charge must be presented, a substantial and general statement will give the court jurisdiction to proceed. (*Jordan* v. *Circuit Court,* 69 Iowa, 177, 28 N. W. 548; *State ex rel. Fischer* v. *District Court,* 65 Minn. 146, 67 N. W. 796.) The particular act with the attendant circumstances furnishes its own characterization, if the statement be complete and substantial enough to justify a conclusive inference of knowledge and intent in the contemnor at the time the act is done.

It is said that a contempt proceeding is criminal or *quasi* criminal in character, and that, in setting forth the act constituting the contempt, the intent with which it is done should be alleged. That it· is a proceeding of a criminal nature is true. (*State ex rel. Gemmell* v. *Clancy,* 24 Mont. 359, 61 Pac. 987; *State ex rel. Flynn* v. *District Court,* 24 Mont. 33, 60 Pac. 493.) But it is not always necessary in charging a crime formally, in an indictment or information, to allege the intent separately. Speaking generally, it is always necessary to allege the intent in some way; but, whenever in the nature of the individual case it is a part of the act or acts alleged, it need not be separately stated. (Bishop's New Criminal Pro-

cedure, sec. 521.)    So, also, if the statute creating the offense
is silent as to intent, no allegation on the subject is necessary.
(*Id.*, sec. 523; *State* v. *Broadbent,* 19 Mont. 467, 48 Pac. 775.)

The affidavits do not in terms allege that the relator know-
ingly and intentionally attempted to corrupt Jurors Hickman
and Wright; nevertheless, that it was his intention to do so is
a conclusive inference from the facts stated.    That this was a
contempt under the statute is too clear to require discussion.
Though the attempt was unsuccessful, nevertheless the relator
took every step necessary to convey the information to Hick-
man that he would reward him and others who would render a
favorable verdict; and while his passing conversation with
Wright might in itself, if nothing else appeared, be treated as
the result of thoughtless ignorance, it is characterized by his
behavior with reference to Hickman, and indicates the attitude
of mind entertained by him.

In *Ruff* v. *Rader,* 2 Mont. 211, one of the questions before the
court was whether members of the panel had formed or ex-
pressed an opinion upon the merits of the case so as to dis-
qualify them from sitting. as jurors in the case.    It appeared
that one White had talked with the plaintiff after becoming a
member of the panel.    In this connection the court said: "Be-
fore entering upon a discussion of the questions herein, we
wish to say that jurors, summoned to attend court in that capac-
ity, who will talk with parties having causes for trial about
their causes, and thereby form an opinion of the merits of the
cause, are guilty of contempt of court, and should receive the
highest punishment therefor; and a party who would approach
a juror and talk with him out of court about his case is like-
wise guilty of contempt, and should be punished accordingly.
Such conduct shows corruption of the gravest character, or
gross ignorance amounting to criminality."

It does not matter whether a juror be actually sworn upon
a particular case or is only a member of the panel from which
a trial jury is to be selected.    A person who offers a bribe to
a juror who may be called to hear and determine any question

or controversy, with intent to influence his vote or decision, is guilty of a felony.    (Pen. Code, secs. 190, 193.)    These provisions clearly include offers made to members of the jury panel, and do not refer to those members only who have been sworn in a particular case, whose votes it is sought to influence in the case.    Such conduct undermines the very foundations of justice, and is justly condemned by the law as a high crime.    For the same reason it is a contempt of the most flagrant character, and demands summary punishment as an unlawful interference with the proceedings of the court; for its direct tendency is to bring courts generally, and for the time being the particular court, into disrepute, and, in so far as it has this tendency, is distinctly an interference with the proceedings of the court. While the affidavits do not charge the offering of a bribe—for no specific sum was named to Smith in the conversation relator had with him—yet the result of the conversation was communicated to Hickman; and, so far as the result of the matter was concerned, there was a clear attempt corruptly to influence the juror, or at least to open up the way for further negotiations looking to that end, in case Hickman manifested a disposition to enter into them.    We cite the following cases, some of which involved approaches to jurors actually sworn to try a particular case, while others involved approaches to members of the panel only: *In re Gorham,* 129 N. C. 481, 40 S. E. 311; *Emery* v. *State* (Neb.), 111 N. W. 374, 9 L. R. A., n. s., 1124; *State* v. *Doty,* 32 N. J. L. 403, 90 Am. Dec. 671; *Langdon* v. *Wayne Circuit Judges,* 76 Mich. 358, 43 N. W. 310; *Wells* v. *District Court,* 126 Iowa, 340, 102 N. W. 106.    In the case of *In re Buckley,* 69 Cal. 1, 10 Pac. 69, it was held a contempt, under a statute similar to ours, for one even to profess to litigants that he could influence the decision of a court and secure for them a favorable decision.

The affidavits are sufficient to show an attempt on the part of Webb to influence jurors Hickman and Wright, and the court had jurisdiction to proceed.

The evidence is sufficient to sustain the charge.    The case of *Webb* v. *Boucher* was pending in court, and was set for trial.

The evidence warrants the finding that the statement by Webb to Smith that he would make it right with Hickman if he got a verdict in his favor, and that he was going to make it right with any of the boys that stayed with him, was actually made, and that it was communicated to Hickman. This is testified to circumstantially by Smith, and he is corroborated, to some extent at least, by Hickman, who came up just as the conversation ended, and saw Webb leaving Smith, who immediately detailed the conversation to him. As corroborative of the statements of Smith, and as an indication that Webb did not deem the matter closed by Smith's statement of the character of Hickman when approached by Webb, the trial court attached significance to the fact, testified to by Hickman, that, on at least two occasions afterward, Webb accosted Hickman to make inquiries about the movement of trains leaving Butte, when there was no apparent necessity for it, and that at a prior time he invited Wright to have a cigar, and then drew him, a comparative stranger, into a conversation about the case. Webb denied all the statements made by Smith. He denied that he even knew or had a conversation with Smith. He admitted, however, that the conversation took place with Wright, but insisted that it was opened by Wright. There was a conflict in the testimony in almost every particular; but the trial court, after seeing the witnesses and hearing them testify, concluded that the facts warranted a finding of guilty, and with this finding we do not think this court should interfere. No one heard the conversation between Smith and Webb; and, so far as concerns that feature of the case, the finding is based upon the testimony of Smith. Nevertheless, if the trial judge believed Smith, which he undoubtedly did, his evidence was sufficient to justify the finding.

But counsel for relator insist that by his own showing Smith was the accomplice of Webb, and hence that Webb could not, under the statute (Pen. Code, sec. 2089), be found guilty upon Smith's uncorroborated testimony. Since a trial for a contempt is a criminal proceeding, we think the statute should ap-

ply in proper cases. In this case, however, it has no application, because it is clear that Smith was not an accomplice of Webb. This is manifest from the testimony of Smith, the substance of which is stated in his affidavit, in that he did not undertake to act as the voluntary agent of Webb to communicate with Hickman. The only inference that can be drawn from his statement to Webb is that he intended to tell Hickman for the purpose of putting him on his guard, and that he did so. While he did not refuse directly to be a party to Webb's apparent purpose to influence Hickman, he clearly indicated that he would not be a party to the scheme, in that he expressed the opinion that Hickman could not be influenced, and that he agreed to be silent as to every one else but Hickman, while as to him he felt bound to tell him—that is, to warn him—as to Webb's purpose. And this notion is further borne out by the testimony of Smith, who stated that as soon as Hickman came up, Webb went away; that thereupon he called Hickman's attention to Webb, asking Hickman if he knew Webb, and that he at once repeated the conversation to Hickman. He also further stated that he did not do this at the instance of Webb. The theory of the court was that Smith did not act in aid of Webb's scheme in repeating the conversation, and was therefore not an accomplice, but that, inasmuch as the information Webb desired Hickman to receive was actually conveyed to him by Smith, though not intentionally in aid of the design, Webb was not to be held guiltless, because, though he told Smith not to speak of the matter, he did not object when Smith stated his purpose. In view of this fact, added to Webb's prior behavior toward Wright, and his subsequent conduct toward Hickman, the court correctly concluded that Webb, finding that his communication would reach Hickman, was satisfied to leave the matter at that, and wait to see whether Hickman would respond to the advances thus made.

An accomplice is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime. (1 Words and Phrases, 75.) One may be-

come an accomplice by being present and joining in the criminal act, by aiding and abetting another in its commission, or, not being present, by advising and encouraging its commission; but knowledge and voluntary action are essential in order to impute guilt. One may unconsciously assist in forwarding the criminal scheme. In such case he is not criminal, but merely an unconscious and therefore an innocent agent. (*State* v. *Allen,* 34 Mont. 403, 87 Pac. 177.) Whether Smith was an accomplice of Webb, consciously and voluntarily communicating the conversation had with him to Hickman, for the purpose of aiding Webb's design, or whether he merely sought to put Hickman on his guard, was a question for the court upon the evidence; and since the evidence furnishes ground for this latter inference, we cannot say that the court was wrong in its conclusion. It matters not that this court might, if the hearing had been had before it, have reached a different conclusion upon the evidence. The district court had before it the witnesses in person, and saw them and heard them testify. This important element of the testimony we cannot weigh and consider. The court evidently gave it full weight, and we cannot say that the evidence as a whole does not clearly and convincingly establish relator's guilt.

The foregoing conclusion is that of my Associates. I do not concur in it. Smith was an accomplice of Webb, or he was not. If he was, the evidence is not sufficient to warrant the conclusion of Webb's guilt of an attempt to influence Juror Hickman. If Smith was not an accomplice, there is no foundation in the evidence for the conclusion that Webb used him as an unconscious, and therefore innocent, medium of communication. While the conduct of Webb, if the statements of Smith are to be taken as true, shows a criminal and wicked heart, yet if, when he found out that he could not influence Hickman, he abandoned his purpose, he could not be held guilty on the ground that afterward Smith thought it his duty to warn Hickman. He cannot be held responsible for Smith's act in this regard. I think the evidence shows that Webb concluded that

Smith's estimate of the character of Hickman was correct, and abandoned his purpose to attempt to influence him altogether. If so, Webb's conduct did not interfere with the proceedings of the court.

I do not think the evidence sufficient to justify the conclusion that Webb intended to influence Juror Wright. The incident at Gillis' cigar store was the result of an accidental meeting; and while any conversation between Wright and Webb touching the case was improper, what little did occur was the result of thoughtless ignorance on the part of both, rather than of any corrupt design, or any design, on the part of Webb.

The order to show cause on application for writ of supervisory control is discharged, and the application in that regard is dismissed. The judgment of the district court is affirmed.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.