STATE, Respondent, *v.* McCOMAS et al., Appellants.

(No. 6,497.)

(Submitted June 24, 1929.   Decided July 8, 1929.)

[278 Pac. 993.]

*Messrs. James F. O'Connor, V. C. Miller* and *M. J. O'Connor,* for Appellants, submitted a brief; *Mr. James F. O'Connor* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. S. R. Foot,* Assistant Attorney General, and *Mr. John N. MacFarlane,* County Attorney of Sweet Grass County, for the State, submitted a brief; *Mr. S. R. Foot* and *Mr. MacFarlane* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment of conviction of grand larceny. In December, 1926, James G. McComas and Albert Sylling were charged with stealing twenty-four head of sheep from one Tom Hovland. On pleas of "not guilty" the defendants were brought to trial in February, 1928; each defendant was found guilty and his punishment fixed at from one and one-half to three years in the state prison.

The record discloses that the defendants are farmers who had not engaged in the sheep business prior to 1926. In March of that year Oscar A. Nepstead sold to defendants 798 head of sheep and retained a mortgage on them. These sheep were branded with two black bars, and the older sheep were also branded with a black circle. During the summer and fall the sheep were herded by one Henry C. Jones. Tom Hovland ran a small band of sheep branded with a red bar.

In October, 1926, Nepstead, to realize on his mortgage, sold 657 head of sheep, presumably belonging to defendants, to a man named Hanson; defendants being present at the time of sale and assisting in loading the sheep on cars for shipment to North Dakota. McComas told Hanson that there were twenty-five to thirty head of young sheep in the band. Hanson sold 250 head of the sheep, in North Dakota, to one Shillingstad, who "got all the young sheep in the band." In November the sheriff of Sweet Grass county went to Dakota and discovered the twenty-four head of Hovland sheep in Shillingstad's possession. Certain of these sheep Hovland identified as his without the aid of the brand.

The evidence as to the manner in which the Hovland sheep came to be in the defendants' band and of guilty knowledge

and intent came from the herder, Jones. He testified that defendants' lambs were sold in September and the ewes on October 27; that on or about October 3 he overheard a conversation between defendant Sylling and one Harlan, in which McComas took part and in which Harlan stated that he had 250 head of Hovland's sheep which he had bedded for three nights; that Harlan asked Sylling to help him get away with them, and Sylling replied, "You can't get $2,500 every day"; that Sylling then asked McComas where the "wire brush" was and, seeing it, asked the witness to rub his hand over it to see if it would "do the work." The witness testified that, two days thereafter, McComas placed twenty-four or twenty-five head of red-bar sheep in the band, telling the witness that they belonged to the defendants and had been lost. These were young sheep. He further testified that he quit work on the day the sheep were sold and went to Bozeman, returned to Big Timber and told his story to the sheriff, and went back to Bozeman; that the defendants visited him there and told him they "were up against it," and if he heard anything to let them know so that they "could fix it up." Jones further testified that after he was subpoenaed as a witness the defendants met him in Columbus and asked him to go to the office of their attorney and make affidavit that he had seen no red-bar sheep in the band; he refused; McComas "jogged me right on the shoulder with a gun and told me to come, so I went"; that he first refused to sign the affidavit prepared, but when McComas remarked, "You know what we told you," he signed; however, as the defendants and the witness were leaving the office, the witness turned back and told the attorney to throw the affidavit in the fire, as it was not worth anything. His testimony is that he then wanted to return to Big Timber, while defendants tried to force him to go to Bozeman; he evaded them and returned to Big Timber, where he related what had happened to the sheriff.

Counsel for defendants contended at the trial that Jones was an accomplice, and that, aside from his testimony, the evidence was insufficient to warrant a conviction; on this theory defend-

432

ants moved to dismiss at the close of the state's case and, later, to direct a verdict of acquittal. Each motion was overruled.

1. It is contended that the court erred in giving the following instruction to the jury: " * * * To constitute Henry C. Jones an accomplice in the larceny of the Hovland sheep, if in fact you find beyond a reasonable doubt that any such larceny was committed, he must have entertained a criminal intent common with that which moved the defendants to take these sheep, if they did so take them, and to appropriate them to their own use, if you believe beyond a reasonable doubt that they did so appropriate them; and whether Henry C. Jones had such criminal intent is a question to be determined by you from all the evidence in the case."

On settlement this instruction was challenged on the ground that it "introduces an element uncalled for by the law"; that it was not necessary that Jones entertained a criminal intent; and that the instruction conflicts with former instructions given. These are the only objections which can now be considered. (*State* v. *Reed,* 65 Mont. 51, 210 Pac. 756; *State* v. *Bolton,* 65 Mont. 74, 212 Pac. 504.)

Counsel contend that "if one is present at the time a larceny is committed it is proper to instruct the jury that a common criminal intent is not necessary, but that one may be equally guilty of being an accomplice if he advises and encourages in the commission of the crime," citing *State* v. *Slothower,* 56 Mont. 230, 182 Pac. 270; *State* v. *Asher,* 63 Mont. 302, 206 Pac. 1091. The authorities cited do not support counsel's contention; the former as shown below, is to the contrary; the latter does not deal with the subject of an accomplice.

In so far as the challenged instruction states the law, it is correct; it was preceded by a lengthy instruction defining an accomplice, and therein it is stated that the term "means a person who is connected with the crime by unlawful act or omission. * * * " These instructions are to be read together as one (*State* v. *Smith,* 57 Mont. 563, 190 Pac. 107) and, when so read, there is no conflict in them—the one but supplements the other.

2. Specifications numbered 2 and 3 challenge the sufficiency of the evidence to warrant a conviction on the theory that Jones was an accomplice. If the premise is correct, the conclusion follows, as a conviction cannot be had on the testimony of an accomplice unless corroborated by other evidence "which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." (Sec. 11988, Rev. Codes 1921.)

However, an accomplice is one who is guilty of complicity in the crime charged, either by being present and aiding and abetting in it, or by having advised and encouraged its commission, though absent at the time (*State* v. *Spotted Hawk*, 22 Mont. 33, 55 Pac. 1026); one who knowingly, voluntarily and with common intent with the principal offender, unites in the commission of a crime (*State ex rel. Webb* v. *District Court*, 37 Mont. 191, 15 Ann. Cas. 745, 95 Pac. 593); in order to constitute such a person an accomplice "he must have entertained a criminal intent common with that which moved the defendants," * * * and if he was not present joining in the larceny "he must also have advised and encouraged its commission" (*State* v. *Slothower*, above.) The test as to whether or not a witness is an accomplice is: Would the facts justify his prosecution with the defendants (*State* v. *Welch*, 79 Mont. 614, 257 Pac. 1010), under Revised Codes 1921, section 10732?

Mere presence at the time a crime is committed, without interfering, does not make one a party to a crime unless his interference was a duty by reason of some position held by him, or unless noninterference was designed by him and operated as encouragement or protection; nor does the mere concealment of knowledge that a crime is about to be committed constitute such person an accomplice (1 Wharton's Criminal Law, 11th ed., 316 and 341), no matter how reprehensible such conduct may be (*State* v. *Smith*, 75 Mont. 22, 241 Pac. 522; *State* v. *Arnold*, 84 Mont. 348, 275 Pac. 757).

It is clear that Jones could not have been prosecuted on the theory that he was a principal, and therefore he was not an

accomplice. His testimony was to be considered along with all the other facts and circumstances shown, regardless of "corroboration," and, taken as a whole, the evidence warranted the verdict of conviction.

3. Finally it is asserted that the court erred in sustaining an objection to the following question, propounded to the witness Jones on being recalled, as the state was about to close its case: "Do you expect to be prosecuted for what you did in connection with these sheep?" The witness had theretofore been fully interrogated on cross-examination as to whether he had been promised immunity from prosecution and, in effect, had testified that he had received no promise other than that some person unnamed had told him that "we wouldn't put you in any danger for not reporting it before," and it seems that the witness had no fear of "danger" except for the fact that he had not sooner reported his knowledge to the proper officers.

It is true that in *State* v. *Ritz*, 65 Mont. 180, 211 Pac. 298, this court held that error was committed in sustaining an objection to a more comprehensive question embodying the query as to the expectation of a witness with respect to prosecution, but that witness was an admitted accomplice and the question of immunity was material; here Jones was not an accomplice and could not have been prosecuted for the crime related. He could not have been prosecuted as an accessory under section 10733, Revised Codes of 1921, since, although he had "full knowledge that a felony [had] been committed," he did nothing to "conceal it from the magistrate, or harbor or protect the person charged" with the crime. He was not a receiver of stolen property, within the meaning of section 11388, Id., as he did not receive the sheep in question "for his own gain or to prevent the owner from again possessing his own property." Receiving the sheep as he did, his possession was but that of the defendants, and it is apparent that he made no effort to conceal them from their true owner. Had he been a receiver of stolen property, that fact would not make

him an accomplice of the defendants. (*State* v. *Keithley*, 83 Mont. 177, 271 Pac. 449.)

As the witness could not have been prosecuted on any charge for what he "did in connection with" the sheep, his unfounded expectation in that regard, if any, could not have aided the defense, and, consequently, the exclusion of the question, propounded on the erroneous assumption that the witness was an accomplice, did not affect the substantial rights of the defendants and does not warrant a reversal. (Sec. 12125, Rev. Codes 1921.)

No reversible error appearing, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.