STATE, RESPONDENT, *v.* MERCER, APPELLANT.
(No. 8327.)

(Submitted November 19, 1942. Decided January 13, 1943.)

[133 Pac. (2d) 358.]

*Messrs. Wellington D. Rankin, Arthur P. Acher and Mark Derr,* for Appellant, submitted an original, a reply and a supplemental brief, and argued the cause orally.

*Mr. R. V. Bottomly,* Attorney General, *Mr. Fred Lay,* Assistant Attorney General, *Mr. Edward T. Dussault,* County Attorney and *Mr. Randolph Jacobs,* Assistant County Attorney of Missoula County, submitted a brief; *Messrs. Lay, Dussault* and *Jacobs* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant appeals from his conviction of receiving stolen property and from the order denying a motion for new trial. His chief contention is that the evidence was insufficient to justify the verdict in that Bernard Girson, who stole and sold him the property, was, according to the state's evidence, de-

fendant's accomplice and that the latter's testimony was not corroborated as required by section 11988, Revised Codes.

The state's evidence was that on February 14, 1941, Girson approached defendant in the latter's barroom and asked him whether he "could use what I had," and apparently receiving an affirmative answer he later in the day delivered a case of fifteen cent cigarettes,—"either Camels or Luckies",—to defendant at the back door and received from him $30 in currency; that the cigarettes were stolen by Girson from the stockroom of Sheehan and Bro., to which Girson had access as stockroom man and delivery man; that the case consisted of fifty cartons, each containing ten packs of cigarettes each, or a total of 10,000 cigarettes; that the wholesale price at the time was $61.80 per case, and that the price differences between wholesalers was not over 10 cents; that this was the seventh or eighth such transaction between them directly, the same price having been charged for fifteen cent cigarettes each time. Girson did not recall whether on this occasion he told the defendant that the cigarettes were stolen, but that he had done so on prior occasions, that defendant had asked him whether there was any danger of getting caught and had told him to keep his mouth shut if he were caught; that on some occasions he solicited defendant and on others defendant approached him. All the state's evidence connecting defendant with the offense charged was Girson's testimony.

Defendant's testimony was that his only transaction with Girson was on February 13, 1941, when the latter solicited an order for cigarettes; but that being offered the cigarettes at $50 a case he accepted the bargain; that Girson returned later to the front door in the Sheehan truck, delivered the case to Girson's twenty-two year old daughter, who is his hotel clerk and barmaid, and received the $50 from her. This testimony was corroborated in the main by three full time or part time bartenders, one of whom was his nephew, and by the barmaid, his daughter.

Two witnesses for defendant testified that Girson had sold

cigarettes to them for $50 or "around $50" per case. Another witness testified that in May, 1941, after defendant's arrest, Girson tried to sell him cigarettes without naming the price but that he did not buy "because Mercer got in trouble." Questioned by defendant's attorney this witness testified as follows:

"Q. Well did he say anything as to whether he told Mercer those were stolen cigarettes? A. Didn't say anything to me about that.

"Q. Well did you ask him? A. Well I kind—I said 'Didn't you say anything to Mercer—didn't he know anything about it?' and he said he hadn't said anything to Mercer about them, that they had been stolen."

Girson testified in rebuttal that he did not see this witness during April, May, June and July, 1941; that at the time he was still working for Sheehan's but was making deliveries outside of Missoula.

Defendant also sought to impeach Girson's reputation for truth and veracity by two police officers who testified that they knew Girson's reputation "to some extent" and that it "was rather bad" or "bad to a certain extent." A third character witness, a former policeman, testified that Girson's reputation was bad, apparently however basing it on a personal transaction in which he said that Girson had once charged him "about 200% on a small loan," at his uncle's pawn shop. In rebuttal Girson denied this and testified that he had never worked in the pawn shop, thus indicating at least a doubt as to the identity of the person whose reputation was referred to by the character witness.

On this conflicting evidence the jury found defendant guilty, choosing to believe Girson rather than defendant and his witnesses. Certainly the state's evidence is not so inherently weak and improbable as to lack substantial evidentiary value, and defendant's contention to that effect cannot be sustained.

However in spite of that fact, if Girson was defendant's accomplice and was not sufficiently corroborated, the

150

conviction cannot stand. Defendant relies upon *State* v. *Keith-ley,* 83 Mont. 177, 271 Pac. 449, 451, 452, in which this court said: "If Burshia's testimony is to be believed, then the appellant is himself equally guilty of the principal offense of larceny. Larceny and knowingly receiving stolen property are separate and distinct crimes under our statute (secs. 11368 and 11388, Rev. Codes 1921), and therefore one who steals property is not an accomplice of one who receives the property knowing it to be stolen (11 C. J., p. 683; 17 R. C. L., p. 86; *Mayes* v. *State,* supra, [11 Okl. Cr. 61, 142 Pac. 1049]); but where, as here, the thief and the receiver of the stolen property conspire together, in advance of the larceny, for one to steal and the other to receive, they are principals, and the thief is an accomplice of the receiver, and vice versa."

Thus defendant accepts the well-settled rule that in general he who commits the theft is not the accomplice of him who knowingly receives the stolen property. This rule is accepted not only in Montana (*State* v. *Keays,* 97 Mont. 404, 34 Pac. (2d) 855); although there are decisions in some jurisdictions to the contrary, it is the generally prevailing rule. (22 C. J. S., Criminal Law, p. 1362, sec. 798 subsec. w.) But the defendant contends that under the rule in the *Keithley Case* the state's evidence constituted Girson his accomplice. His view is that the evidence indicates such an understanding between them prior to the theft that he became Girson's accomplice in the theft and at the same time Girson became defendant's accomplice in the crime of receiving stolen property.

But the evidence of this transaction indicates, not that a theft was to be committed, but that it had been committed prior to the solicitation of defendant; for Girson offered to sell defendant what he had, not what he proposed to steal, or what defendant wanted him to steal. While the prior transactions and the price indicated defendant's knowledge that the goods were stolen, they did not indicate defendant's complicity in this theft unless it could be said that there was a general conspiracy between them for Girson to steal cigarettes and defendant

to market them, which is negatived by the absence of any suggestion that defendant had agreed to accept whatever Girson might steal, or that he would accept cases of cigarettes at regular intervals. On the contrary, the evidence showed that there were separate transactions, based on separate individual orders by Mercer at irregular intervals; that the defendant induced all of Girson's thefts was negatived by the defendant's evidence that two or three others were buying cigarettes from Girson on the same terms as himself; and the form of solicitation on the occasion in question indicates that the theft had already been made, and therefore negatives the idea that before the order defendant even had advance knowledge of the theft, to say nothing of instigating, aiding or abetting it. Certainly there is nothing in the record to show that the defendant instigated either this particular theft, or a connected series of which this was a part, or even that he knew this particular crime was to be committed.

There is absolutely no intimation in the record that the transaction in question was handled on the basis of any prior understanding between defendant and Girson or in accordance with any plan arranged between them. It was a transaction entirely separate from the prior ones although of the same general nature. The record utterly belies any prior understanding that defendant would buy the cigarettes in question if Girson should steal them. The evidence indicates that if he had not bought them they might have been bought by one of his two witnesses who testified to buying cigarettes from Girson at a large discount. There is no evidence of any general conspiracy which included all four; and certainly there is no evidence of any conspiracy which included defendant in this particular transaction any more than his two witnesses. There is no suggestion that either the defendant or his witnesses counseled and encouraged Girson in his theft or in a general conspiracy of which it was a part. In this instance there were still two separate crimes—the theft by which Girson gained the $30 collected from defendant, and the receiving of stolen

property by which defendant profited separately to the extent of the greatly reduced price.

In his argument defendant confuses prior knowledge of the crime with such circumstances as constitute aiding or abetting it, so as to make one an accomplice or accessory before the fact (sec. 11863, Rev. Codes). The mere knowledge that a crime is about to be committed does not constitute such person an accomplice, no matter how reprehensible such conduct may be (*State* v. *Smith,* 75 Mont. 22, 241 Pac. 522; *State* v. *Arnold,* 84 Mont. 348, 275 Pac. 757; *State* v. *McComas,* 85 Mont. 428, 278 Pac. 993) ; and the fact that upon prior occasions defendant and his witnesses may have purchased stolen goods would not seem sufficient to make them accomplices in that particular theft, nor even to give them the knowledge that it was to be committed. Certainly the evidence differs radically from that in the *Keithley Case,* supra, in which the court said : ''If Burshia's testimony is true, there is no doubt of the appellant's participation in the larceny of the cow as a principal actor. He was the instigator, the primary cause, having projected it and induced Burshia to act.''

This court reached its conclusion in the *Keithley Case* solely upon the authority of three Oklahoma cases. The annotation in 111 A. L. R. 1398, at page 1401, cites a number of cases following this Oklahoma exception from the general rule that the thief is not an accomplice of the receiver of stolen goods, but concludes : ''The exception under which the thief is regarded in some states as an accomplice of the receiver has been expressly repudiated in some other jurisdictions, and even in Oklahoma has been met with judicial equivocation.''

An analysis of the question indicates to us that the reasoning of the *Keithley Case* and the Oklahoma cases upon which it is based falls into error, not in holding that the receiver is an accomplice in the theft, but in holding that the thief is an accomplice in the receiving. As to the first Oklahoma case cited, *Logan* v. *State,* 23 Okl. Cr. 316, 214 Pac. 944, the result was probably correct in that the evidence showed a general

conspiracy to go into a continuing business of stealing and disposing of automobile tires, the witness and a third conspirator to steal them and the defendant to market them, all sharing in the proceeds of the joint enterprise. Thus the conspiracy seems to have constituted one crime, one continuous plan, in which all were equally engaged, to steal and dispose of property.

In the other two Oklahoma cases cited, *Brownell* v. *State,* 33 Okl. Cr. 323, 244 Pac. 65, and *Key* v. *State,* 38 Okl. Cr. 169, 259 Pac. 659, 660, and in the *Keithley Case,* supra, the facts were clearly sufficient to constitute the receiver an accomplice in the theft, but whether the thief thus became an accomplice in the receiving of stolen property is a different matter entirely. In all three cases the court recognized the general rules that the theft and the receiving are separate crimes and that neither the thief nor the receiver is an accomplice in the other's crime, and proceeded to state an exception, which appears in *Key* v. *State,* supra, in these words: "The exception to this general rule is that, where the thief and the receiver of stolen property conspire together in a prearranged plan for one to steal and deliver the property to the other, and pursuant to such plan one does steal and deliver to the other, the receiver is an accomplice of the thief, and the thief is an accomplice of the receiver." In this the court failed to distinguish between the effects of the additional facts upon the two crimes in question, which were still separate crimes and were regarded as such.

To analyze the matter further, on the one hand the receiver does not necessarily instigate, aid, abet or induce the theft, and if he is an accomplice in the theft it is because he does one of those acts; on the other hand if it were possible for the thief to be an accessory to the crime of receiving stolen property at all, where the latter is a separate crime (rather than merely a part of one crime as in *Logan* v. *State,* supra), he would always be an accessory, where his act of offering the stolen property for sale leads directly to the crime of receiving it.

As Justice Pound well said in *People* v. *Kupperschmidt,* 237

N. Y. 463, 143 N. E. 256, 32 A. L. R. 447: ''The question is whether the thief who delivers stolen goods to a receiver, who takes with guilty knowledge, is an accomplice of the receiver. The fact that the receiver is not in the *absence* of prior accessorial acts an accomplice of the thief in the larceny is irrelevant. * * *'' Conversely, the fact that the receiver is, in the *presence* of prior accessorial acts, an accomplice of the thief in the larceny, is equally irrelevant. Thus the fact that the receiver becomes an accessory to the theft cannot increase the thief's relationship to the separate crime of receiving stolen property, for it makes him less rather than more an aider or abetter in that crime. Furthermore, the general rule that the thief is not an accessory to the receiving seems to be based, not only on the fact that the theft and the receiving are separate crimes, but on the fact that his act of offering or delivering the goods, while an act indispensable to the act of receiving, is its converse or complement and has not been made a crime by the legislature. For that same reason the person performing the converse or complementary act is generally held not the accomplice of the criminal in such crimes as abduction, accepting bribes, receiving bribes, compounding a felony, rescuing prisoners, operating gambling games, slot machines, lotteries or raffles, illegal sales, as of liquor, lottery tickets or narcotics, etc. (See 22 C. J. S., Criminal Law, p. 1350 ff, sec. 798.)

It seems clear, therefore, that the *Keithley Case,* while correct in holding that under its facts the receiver is an accomplice in the larceny, is not correct in holding that the thief therefore becomes an accomplice in the receiving of stolen property; for the facts which change the receiver's ordinary relationship to the larceny of property do not change the thief's relationship to the separate crime of receiving it, except to make his offer and delivery of the goods even less the inducing cause of the receiver's crime, and no less its converse. We must, therefore, decline to follow the exception to the general rule announced in the *Keithley Case,* assuming that it is pertinent here.

Upon this state of the facts and the law, we conclude that the

state's evidence did not constitute Girson defendant's accomplice, and that the evidence was sufficient for his conviction. However it may be seriously questioned whether, if corroboration were needed it was not supplied by the defendant's testimony that he bought the case of cigarettes for $50 instead of $30. The idea as expressed by one of defendant's witnesses was that the difference between $61.80 and $50 was not sufficient to put the purchaser on notice that the goods might be stolen, but that the difference between $61.80 and $30 would be otherwise. However we must take judicial notice of the fact that at the time of the offense charged the lowest federal stamp tax on ten thousand cigarettes was $32.50, leaving only $29.30 of the $61.80 wholesale price as the cost of the goods. Deducting $32.50 from the $50 claimed by defendant to have been paid leaves only $17.50 as the cost of the cigarettes, a discount of $11.80 from the usual $29.30 cost, or 40 per cent. Inadequacy of the price paid has been held admissible to show guilty knowledge (17 R. C. L., page 85, para. 92; 53 C. J. 532, sec. 83), and while the discount of 40 per cent. from the retail value would perhaps not be sufficient to put the purchaser on notice, it would seem otherwise as to such a discount from the wholesale price, especially when paid to an employee of a wholesaler by a retailer who was as well informed and experienced in the retail cigarette business as the defendant indicated himself to be. It is hard to imagine such a cigarette dealer not being informed as to the cigarette tax; however we do not base our opinion upon this point but merely indicate it in passing.

As noted above, the defendant does not question the rule, well established in Montana, that in general the larcener is not the accomplice of the one who knowingly receives stolen property, but relies entirely upon the exception stated in the *Keithley Case*, which he contends applies to him. He does not suggest that the general rule should be abandoned and that this court should now adhere to the minority rule in order to reverse his conviction, and we see no reason why we should do so.

Defendant next contends that there is a failure of proof as

to the allegations of the information that H. F. Sheehan and Bro. is a partnership. However as this court said in *State v. Grimsley*, 96 Mont. 327, 30 Pac. (2d) 85, 86, ''The applicable statute defines 'larceny' as a taking 'from the true owner' (sec. 11368, Rev. Codes 1921), but does not define the character of the ownership, whether general, special, joint or several, absolute or qualified, and while the ownership must be alleged, the allegation does not give character to the act, but is merely a matter of description.'' The same is true of section 11388. The words ''a copartnership of Missoula, Montana'' are descriptive of the owner rather than of the act charged or of the nature of the ownership of the property concerned. The property was fully identified as that of H. F. Sheehan and Bro., which was repeatedly referred to as ''H. F. Sheehan Brothers,'' ''the Sheehan Brothers,'' and ''the Sheehan firm'' without any objection or suggestion of uncertainty or ambiguity detrimental to the defendant. The ownership was fully proved as alleged, and there was no suggestion of any danger that the defendant may be subjected to another prosecution in connection with the same property as that of a different owner.

Defendant next complains that the trial court erred in permitting a deposition of Girson taken before trial to be taken to the jury room. But the deposition was admitted in evidence at defendant's insistence over the state's objection, and the court's action in sending it to the jury room was assented to by the defendant. This is clearly shown in the record as follows:

''The Court: Ladies and gentlemen of the jury, the final judgment in this case rests with you, to determine whether or not the defendant Mercer is guilty; this deposition contains some testimony taken by this witness some time ago; I think in fairness to the defendant, that I will allow this deposition to be received in evidence, and when you go to the jury room when this case is finally submitted to you, I will let you take this deposition along and read it over and compare it with the evidence given by the witness on the stand. This procedure

on my part in allowing the deposition to go to the jury is a little bit unusual, but under the facts and circumstances in this case and in view of the testimony of this witness, in view of the fact that he gave testimony some time ago, and in view of the further fact that there is a dispute here as to what this witness actually testified to before, and also a dispute between counsel as to what questions were asked this witness, I think, in order for you to determine the question accurately and place a value on the testimony of this witness, that I should let you have the deposition, that is, the typewritten copy of the notes made by the court reporter. So the objections of the county attorney are overruled, and when you go to your jury room you may take that deposition with you.

"Mr. Derr: Then it may be understood and agreed, as I understand the Judge's ruling, that I will not have to read it now.

"The Court: No you need not read it; and particularly, as I mentioned before, I am letting the deposition go to the jury because there is a dispute between counsel as to just what questions were asked the witness before. * * *

"The Court: Well I think we can save time; the deposition has gone to the jury.

"Mr. Derr: Let the jury read it; it is all right."

Defendant complains of the court's refusal to give an offered instruction to the effect that each juror should act upon his own convictions and should not surrender them merely because the majority might be against him, or unless convinced beyond a reasonable doubt. This court has several times held that although the instruction is a correct statement of a juror's duty, it is discretionary with the trial court whether to instruct the jurors especially as to their individual duties. (*State* v. *Hurst,* 23 Mont. 484, 59 Pac. 911; *State* v. *Howell,* 26 Mont. 3, 66 Pac. 291; *State* v. *Phillips,* 36 Mont. 112, 92 Pac. 299.)

The instructions stated that: "This being a criminal case,

a felony, all twelve of your number must agree in order to return a verdict for either the state or the defendant, and all twelve of your number must agree in order to decide any question necessary to be decided in arriving at a verdict.'' That provision, and the reference in other instructions to the minds of the jurors, and the belief of the jurors, must have indicated to them that their twelve individual minds should agree in order to arrive at a verdict.

The next specification of error concerns the court's refusal ▊ to give defendant's offered instruction as follows: ''You are instructed that the defendant is engaged in the business of buying and selling cigarettes, and that witness Girson was delivering cigarettes, and also sold cigarettes, and defendant had no greater burden than any other ordinary man to investigate the ownership of the merchandise and had the right to act upon appearances.''

Without any instruction to guide the jurors as to the burden of ''any other ordinary man'' in the premises, the instruction would have been of no assistance to the jurors, would only have tended to confuse them, and was properly refused.

Without citation of authority, the defendant urges error in ▊ the court's refusal to require the county attorney to disclose what promises had been made to Girson. However the jury could have had no doubt that Girson expected to have the larceny charge against him dismissed in consideration of his testimony. Throughout the cross-examination of Girson, defendant's counsel stressed the point, and Girson's testimony under cross-examination was as follows:

''Q. But you are not expecting to go to trial tomorrow, are you? A. No sir. * * *

''Q. But you are expecting the case to be dismissed? A. Yes sir. * * *

''Q. Answer please; you figure you are not going to trial here tomorrow because you have helped Eddie Dussault here? A. My attorney told me I wasn't going to Deer Lodge. * * *

''Q. But he told you you were not going to Deer Lodge,

for testifying, didn't he? A. He told me I wasn't going to Deer Lodge. * * *

"Q. And you have reason to believe you wouldn't be tried; isn't that true? A. He told me so. * * *

"Q. You wouldn't have testified here if your attorney hadn't told you about this, would you? A. No sir."

Furthermore the court instructed the jury that in judging the credibility and the weight to be given Girson's testimony it might take into consideration the various matters including "the nature and enormity of the offense of which he is accused and his expectation of leniency, his interest in this case, his motives, and any interest which you find he may have in the outcome of this lawsuit." If any error was committed in the premises, it cannot have been prejudicial to the defendant.

At the start of Girson's testimony, defendant's counsel asked the court "to advise and instruct the witness that he was not compelled to testify, on the grounds that it may * * * tend to incriminate him." Subsequently he sought to question Girson on cross-examination concerning the sale or offered sale of cigarettes to other parties than defendant, and urges error in the court's refusal to require Girson to testify in that regard. While Girson's waiver of his privilege as to the transactions with defendant necessarily cover questions properly within the scope of cross-examination on those matters, there was no prejudicial error in the court's refusal to require the witness to answer incriminating questions not germane to his direct examination. (*State* v. *Morgan,* 151 Wash. 306, 275 Pac 717.)

There being no reversible error in the record, the judgment and order denying a new trial are affirmed.

ASSOCIATE JUSTICES ERICKSON and MORRIS concur.

MR. JUSTICE ANDERSON:

I dissent. According to the testimony of Girson, the transaction which is the basis of the charge of the crime is one of a series of similar transactions in which he and the defendant both participated, the witness stealing and the defendant re-

160

ceiving from the witness the stolen property. The transactions were all of the same nature and all handled in the same manner, and at brief intervals of time. The common interest was the gain derived by each—to the thief, the price paid him by the receiver, and to the receiver, the reduction in price.

There was an understanding between the two as to the method of handling before the property was stolen, including the price which the receiver would pay to the thief which was definitely established when the first delivery was made. The particular transaction in question was handled on the basis of that understanding and in accordance with the plan arranged between them. It seems to me that the case comes fairly within the rule in the *Keithley Case,* 83 Mont. 177, 271 P. 449, 452, making the thief the accomplice of the receiver where they conspire together in the common purpose of both, culminating in the delivery of the property to the receiver. (22 C. J. S. pp. 1362, 1363, Criminal Law, sec. 798 subsec. w.)

In the *Keithley Case,* the fact particularly stressed in the court's opinion as showing the corrupt relation between the witness and the accused, making them *participes criminis* in the whole transaction, was the instigation of the theft by the accused, the receiver. In the instant case, there is evidence that the accused, the receiver, counselled and encouraged the thief in carrying out his part of the transaction. It is not the strong case of instigation of the crime by the receiver as in the *Keithley Case.* Here the plan seems to have originated with the thief. He had lawful access and possession of a storehouse full of cigarettes belonging to his employer. The plan was to lift some of these cigarettes and get them into the hands of the accused, which would result in gain to both. Certainly the witness had such part in the receipt of the goods by the accused as made him an accomplice thereto. In my view the case falls within the general rule as to accomplice testimony as defined and illustrated in the *Keithley Case,* showing its application to varied circumstances of complicity in crime. (And see 22 C. J. S., Criminal Law, sec. 786, pp. 1336-1338.)

Experience has shown that one involved in crime is unreliable as a witness against another charged with crime growing out of the same transaction. Self-preservation is a powerful motive, and where, as in the instant case, the witness is prompted by expectation and promise of leniency to himself in prosecution for the theft, there is reason and need for the rule protecting the other accused against whom he is testifying.

Without the incriminating testimony of the accomplice the record shows nothing but an ordinary, legitimate transaction— a salesman actually in the employ, and known to be in the employ, of a well-known wholesaler, calling on a retailer and offering goods at a price, resulting in a sale. The record is wholly lacking in the corroboration necessary to sustain the conviction. The judgment, in my opinion, should be reversed.

Rehearing denied February 9, 1943.