No. 82-502

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

CAROLYN JEAN NORDAHL,

        Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Oleson Law Firm; H. James Oleson, Kalispell,
        Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        William A. Douglas, County Attorney, Libby, Montana

                     Submitted on Briefs: January 5, 1984

                            Decided: March 29, 1984

Filed:    MAR 29 1984

                       _Ethel M. Harrison_

_____
                      Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Carolyn Jean Nordahl appeals from her conviction in the District Court of the Nineteenth Judicial District, Lincoln County, for the crime of attempted deliberate homicide. We affirm.

This is a companion case to State v. Gillham (Mont. 1983), 670 P.2d 544, 40 St.Rep. 1576. In that case, we affirmed the conviction of Hank Gillham, who was found guilty of attempted deliberate homicide by reason of his unsuccessful attempt to murder Carolyn's husband, Jean Nordahl, in November of 1981. Carolyn was implicated as the instigator of the attempted homicide.

On several occasions prior to November, 1981, Carolyn Nordahl had expressed hostility toward her husband and a wish that he would die. The State maintained that she eventually planned to kill her husband and that Hank Gillham was employed to carry out the murder. Evidence was produced showing that Carolyn had removed several thousand dollars from a family bank account shortly before November, that she had slipped a manila envelope into Hank Gillham's car while it was parked in front of a cafe in Eureka, Montana, and that Gillham had retrieved a manila envelope from that car and had bragged to others about receiving a sizeable sum of money. Witnesses testified as to occasions when Gillham had shown them dynamite or other blasting materials, and these individuals were under the impression that Gillham was planning on murdering Jean Nordahl at the direction of Carolyn Nordahl. Gillham was constantly informed of Jean Nordahl's daily work schedule by Carolyn or her daughter, Sonja.

Witnesses testified that on November 12, Gillham and Jean Nordahl entered the shop adjacent to the Nordahl home. Gillham was armed with a pistol at the time. Carolyn Nordahl followed the two men into the shop, but reportedly exited in a foul mood sometime later. Gillham left shortly thereafter, but returned later in the evening. It was at this time that he planted a dynamite bomb on Jean Nordahl's logging truck. At the time, Gillham was accompanied by Mike Darby, the boyfriend of Gillham's daughter, Linda Weitz. Gillham lost a piece of wire while preparing the bomb, but Darby found it and placed it in his pocket. This wire was introduced as evidence at Carolyn Nordahl's trial.

The bomb was wired improperly and did not go off as planned. Jean Nordahl discovered the explosive device on November 13 and notified authorities. It was not until November 23, however, that Darby and Weitz came forward with information that eventually led to the arrest and conviction of Gillham and Carolyn Nordahl.

Gillham was tried first and found guilty of attempted deliberate homicide. Carolyn's trial followed. She was also found guilty of attempted deliberate homicide and eventually was sentenced to thirty-five years in the Women's Correctional Center.

The sole issue on appeal is whether there was sufficient corroboration of testimony by four key witnesses for the State: Sonja Nordahl, Linda Weitz, Mike Darby and Marvin Miller. The appellant maintains that these four individuals were accomplices in the murder plot. If these individuals were indeed accomplices, then their testimony cannot be used to convict Nordahl unless it is corroborated by other evidence which in itself tends to connect her with

the offense. See Section 46-16-213, MCA. Appellant contends that there is no evidence connecting her to the charged crime other than the testimony of these above-named witnesses.

The State freely acknowledges that Sonja Nordahl was an accomplice, but denies that Weitz, Darby or Miller are in any way legally accountable for the crime. The State argues in the alternative that, even if all of the four witnesses are considered accomplices, there is sufficient evidence in the trial record to corroborate key portions of their testimony.

Section 45-2-302(3), MCA, defines the concept of accomplice relevant here:

> "When accountability exists. A person is legally accountable for the conduct of another when:
>
> ". . .
>
> "(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense . . . "

This concept has been the subject of much attention in case law. We have emphasized that mere presence at the scene of a crime is not enough to charge one as an accomplice. State v. Fish (Mont. 1980), 621 P.2d 1072, 1078, 37 St.Rep. 2065, 2071; State ex rel. Murphy v. McKinnon (1976), 171 Mont. 120, 125, 556 P.2d 906, 909. Moreover, the mere knowledge that a crime is about to be committed does not make one an accomplice. State v. Harvey (1979), 184 Mont. 423, 431, 603 P.2d 661, 666; State v. Mercer (1943), 114 Mont. 142, 152, 133 P.2d 358, 361. A true accomplice is:

> "'one who knowingly, voluntarily and with common intent with the principal offender

unites in the commission of a crime. . .
One may become an accomplice by being
present and joining in the criminal act,
by aiding and abetting another in its
commission, or not being present, by
advising and encouraging its commission;
but knowledge and voluntary actions are
essential in order to impute guilt.'"
State v. Harmon (1959), 135 Mont. 227,
236, 340 P.2d 128, 132, quoting State ex
rel. Webb v. District Court (1908), 37
Mont. 191, 200-201, 95 P. 593, 597.

See also State v. Bad Horse (Mont. 1980), 605 P.2d 1113,

1118, 37 St.Rep. 45, 51; Harvey, supra, 184 Mont at 431, 603

P.2d at 666; State v. Kerrigan (1930), 87 Mont. 396,

401-402, 287 P. 942, 943; State v. McComas (1929), 85 Mont.

428, 433, 278 P. 993, 995; State v. Smith (1925), 75 Mont.

22, 27, 241 P. 522, 523.    Accord, People v. Coddington

(1970), 123 Ill.App.2d 351, 259 N.E.2d 382 (construing

Ill.Ann.Stat. ch. 38, sec. 5-2 (Smith-Hurd 1972), which is

identical to Section 45-2-302(3), MCA).

The following analysis of the testimony of Weitz and

Miller reveals nothing that would make them accomplices

under Montana law, such that their testimony requires

corroboration.  Although we treat Darby and Sonja Nordahl as

accomplices, we find that their testimony is sufficiently

corroborated.

Linda Weitz

Linda Weitz is Hank Gillham's daughter.  During trial,

she testified as to Gillham's and Nordahl's actions on the

night of November 12, when Gillham was allegedly planning to

shoot Jean Nordahl in his shop.  Weitz had accompanied

Gillham to the Nordahl home in his car, and observed the

parties entering and leaving the shop.  She testified that

Carolyn Nordahl was apparantly upset or angry after leaving

the shop.  Weitz also testified as to the events that took

place later that evening, when Gillham arrived at Weitz's

and Darby's home and told Darby to accompany him to the Nordahl's. Finally, she testified as to Gillham's furtive activities over the next few days, including the stashing at Weitz's and Darby's home of a satchel or suitcase full of dynamite and an orange coat worn by Gillham on the night of November 12.

Appellant maintains that Weitz was an accomplice in Gillham's attempt to murder Jean Nordahl, because she allegedly was aware that Gillham would plant the bomb, and because she hid the suitcase and jacket. Appellant also emphasizes that Weitz was for a time considered a suspect by authorities during their investigation, and that Weitz personally indicated on the stand that she viewed her behavior as "abetting" her father's acts.

We reject appellant's attempt to brand Weitz as an accomplice through this narrow and often slanted reading of the trial transcript. The mere fact that Weitz suspected her father might try to bomb someone does not make her an accomplice. See, e.g., Harvey, supra (fact that witness saw defendant illegally enter a truck and steal a rifle from therein did not make witness an accomplice). Other portions of Weitz's testimony not cited by appellant reveal that Weitz did not participate in the planning or execution of the crime. Weitz was afraid of her father and what he might do to her if she ever approached the authorities concerning his activities. Weitz did not display the knowing, voluntary behavior necessary to make her an accomplice in the attempted murder of Jean Nordahl.

We recognize that purposely concealing physical evidence which may lead to the discovery or apprehension of an offender is a crime in itself, see Section

45-7-303(2)(e), MCA (obstructing justice). However, the uncontradicted evidence is that Weitz acted as she did out of fear for what her father might do to her, not because she had a purpose or conscious design to obstruct justice. Even if she could be charged with the crime, this would not make her an accomplice in the attempted homicide. One who "aids" an offender after a crime has been committed would not be punished for that crime. Cf. State v. LaMere (Mont. 1983), 658 P.2d 376, 40 St.Rep. 110 (defendant charged with theft cannot claim that second party charged only with receiving stolen property was his accomplice in the theft); Compiler's Comments, Annotations, Section 45-2-302, MCA (one who aids an offender after a crime has been committed can be punished for compounding a felony, Section 45-7-305, MCA).

Mike Darby

Mike Darby was Linda Weitz's boyfriend. His testimony was generally identical to that of Linda. Appellant's principal objections to Darby's testimony are that he (1) assisted in planting the bomb by acting as Gillham's "lookout man" and helping Gillham find a lost wire necessary for completing the bomb; and (2) that he concealed certain evidence, thus making him a knowing accomplice.

There is some evidence in the trial transcript to suggest that even the State may have viewed Darby as an accomplice. During the rebuttal phase of closing arguments, the county attorney did nothing to dispel defense counsel's unequivocal assertion that Darby was an accomplice in light of the law. Although the available evidence of Darby's actions could lead one to the conclusion that he was not an accomplice, we will not make this factual determination. We will presume that the jury, having been instructed on the

law of complicity and having listened to the remarks of counsel, treated Darby as an accomplice. Nevertheless, making this presumption does not compel reversal of Carolyn Nordahl's conviction. Mike Darby's testimony is substantially corroborated by the remarks and observations of witnesses not deemed accomplices. His recital of the events prior to Gillham's return to the Nordahl garage is supported by Linda Weitz's testimony. There is no question that a bomb was planted on Jean Nordahl's truck. An explosives expert confirmed that a wire Darby took with him from the garage matched the wire wrapped around the bomb. That the wires were of the same type was also supported in testimony by an expert from the State Crime Laboratory. This testimony sufficiently corroborates that of Mike Darby.

Marvin Miller

Miller, one of Gillham's employees, knew about some dynamite that Gillham was planning to use, and apparently knew that Gillham was planning to murder Jean Nordahl. Nevertheless, appellant's insistance that Miller was an accomplice is not well-founded. At no time was Miller involved in the planning or execution of the murder plot. Like many other people in the Eureka community, Miller knew of Gillham's loose talk about killing Jean Nordahl at Carolyn Nordahl's request. This knowledge, however, does not make Marvin an accomplice. Harvey, supra; Mercer, supra.

Sonja Nordahl

Sonja Nordahl's actions arguably were those of an accomplice, and the State freely acknowledges this point. She apparantly knew about Gillham's plans, and her phone calls to Gillham with information about her father's work

schedule permit an inference that she knowingly and voluntarily assisted Gillham and her mother in their plans. Nevertheless her testimony was not crucial to reaching a guilty verdict. In any event, we note that some portions of her testimony, including the statements about the placement of the envelope in Gillham's car, were corroborated by other witnesses.

In summary, we find no credible evidence to suggest that either Linda Weitz or Marvin Miller were accomplices in the attempted murder of Jean Nordahl. Their testimony stands on the same basis as that supplied by other witnesses. Corroboration was unnecessary. Their credibility was a matter for the jury to decide. See Bad Horse, supra, 605 P.2d at 1118, 37 St.Rep. at 52. Although we treat Mike Darby and Sonja Nordahl as accomplices, there is sufficient evidence in the record to corroborate their testimony.

The conviction of Carolyn Jean Nordahl is affirmed.

_____
Justice

We concur:

_____
Chief Justice

-9-

Daniel J. Shea

John C. Sheehy

Justices