No. 82-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

THE STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

ANTHONY MARTIN LAMERE,

        Defendant and Appellant.

---

Appeal from:  District Court of the Eighth Judicial District,
In and for the County of Cascade, The Honorable
H. William Coder, Judge presiding.

Counsel of Record:

    For Appellant:

        Marcia Birkenbuel, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena,
Montana
J. Fred Bourdeau, County Atty., Great Falls,
Montana

---

Submitted on Briefs:  December 16, 1982

Decided:  February 3, 1983

Filed: FEB 3 - 1983

*Ethel M. Harrison*

---
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Anthony Martin LaMere was convicted by a jury in Cascade County, Montana, of burglary and felony theft. He now appeals the conviction. We affirm.

On November 29, 1981, at approximately 5:30 a.m., Scheel's Hardware store in Great Falls was burglarized and twenty-one handguns were stolen. Entry was effectuated by a car which was driven through a large window of the store. Investigating police officers found the following evidence near the point of entry: tire marks on the sidewalk caused by vehicle acceleration, a piece of broken turn signal lens, rubber molding in the brick of the building, and a yellow safety pole standing outside the building which had been scraped. From this evidence, police located a suspect vehicle. By matching the damage done to the store to that of the car, they determined that the suspect vehicle was actually used to commit the crime. The car was owned by Leonard Dale Champagne.

On December 4, 1981, Great Falls Police Detective Larry Renman went to Champagne's residence and spoke with Tina Arguello who was living there at the time. She stated that on the evening in question Champagne had given the keys to the car to appellant while the two were at a party. She further said appellant left the party with William Thumm.

Also on December 4, 1981, Thumm was arrested and questioned about the crimes. Originally denying any knowledge of the offenses, he later stated that he rode as a passenger in the car while appellant drove it through the window of the store. At that point, he said, appellant entered the store and returned with a pillowcase full of guns. Thumm

was charged with burglary and felony theft.

On December 7, 1981, Champagne came to the police station and gave a statement to Detective Renman. He said that he had given his car keys to the appellant but had no knowledge of appellant's intentions. He further stated that on the next day he received two handguns from appellant in lieu of damage to the vehicle occasioned by the appellant's actions and he had a "good idea" the guns were stolen.

Appellant was arrested and charged with burglary and felony theft. He plead not guilty to the charges, and a jury trial was scheduled for April 19, 1982.

On April 16, 1982, in the presence of the appellant and his attorney, the State took Champagne's statement. Champagne said that he loaned the car to appellant but did not receive any guns. He then changed his story and stated that he did receive two handguns as payment for damage to his car. Champagne was not charged with any offense related to the crimes or perjury.

At trial the State presented testimony of Evelyn Komeotis who was living with Champagne at the time of the burglary. She testified that in the early morning hours of the day of the crimes the appellant called for Champagne and asked her if Champagne "wanted to make some money." Further, she stated that after Champagne hung up the phone it rang again, he spoke to the caller and then left the residence. Komeotis also testified that on the afternoon after the burglary, while she was in bed, she thought she heard the appellant with Champagne in an outer room and that Champagne had two handguns with him. For some unknown reason, Champagne entered Komeotis's bedroom and held one of the

pistols to her head.

Tina Arguello testified that on the evening before the burglary she had been very intoxicated. She stated that she lied when she told Detective Renman she saw Champagne give his car keys to appellant and that she in fact could not remember what had happened that evening. She indicated that Champagne had asked her to give a false statement to keep him out of trouble.

William Thumm also testified on behalf of the State. In essence his testimony was consistent with the statement he gave police.

Appellant was convicted of burglary and felony theft. Further, due to a prior felony conviction and in accordance with section 46-18-501(2), MCA, the State moved that the appellant be classified as a persistent felony offender. A hearing was held on June 11, 1982. The State presented testimony of Cascade County Deputy Sheriff Laurie Carrette who testified that two fingerprint cards were located in appellant's file in her office and each card represented a separate arrest of the appellant. Further, she indicated that such records are kept in the ordinary course of business. Detective Renman also testified for the State that the two cards represented separate arrests of the appellant and that the appellant was the individual identified on both cards. Patrick Ryan testified that he was a probation and parole officer for the State of Montana and he supervised the appellant when he served a suspended sentence for felony theft on probation from 1977 to 1980. The court also took judicial notice of the fact that appellant signed and filed the following petition in the

-4-

court:

> "Now comes a document for the defendant, TONY M. LAMERE, from the Montana State Parole to summons patrol officer Pat Ryan to uphold his duty and to witness at the defendant's, TONY M. LAMERE hearing that his last felony due to his own guilty plea was a suspended sentence and was completed on November 10, 1980."

The court granted the motion to classify the appellant as a persistent felony offender.

The appellant was sentenced to ten years confinement in the Montana State Prison for the burglary and ten years for the felony theft. He was sentenced to an additional twenty-five years pursuant to the persistent felony offender designation. The sentences are to be served consecutively.

On appeal, appellant presents three issues:

1.  Was Leonard Champagne an accomplice of appellant, thus requiring the State to corroborate his testimony?

2.  If Champagne was accountable for appellant's offenses, was his testimony and that of Thumm sufficiently corroborated?

3.  Did the trial court err in its designation of the appellant as a persistent felony offender where the evidence of the prior conviction consisted of hearsay testimony presented by appellant's probation officer?

Appellant first contends that Champagne was legally accountable for the offenses he committed. Section 45-2-302, MCA, defines when accountability exists. It reads in part:

> "A person is legally accountable for the conduct of another when:
>
> "(1) having a mental state described by the statute defining the offense, he causes another to perform the conduct, regardless of the legal capacity or

-5-

mental state of the other person;

". . .

"(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense. . . ."

Here there is no evidence that Champagne had any knowledge or involvement with the appellant's actions. Indeed, Champagne admitted he at least had a "good idea" the guns he received were stolen, but he did not know what the appellant was planning to do with his car when he relinquished it. Thus, he did not cause the appellant to commit the crimes nor did he aid or abet the appellant to facilitate commission of the crimes.

We recognize there was some testimony presented that may indicate Champagne had prior knowledge of the crimes. However, there is substantial evidence upon which to conclude that Champagne was not responsible for the acts of the appellant.

It also appears that the appellant is asserting Champagne is legally accountable for his crimes under the definition of "obtains or exerts control," required by the theft statute. Section 45-2-101(39), MCA, defines "obtains" and "exerts control" and includes possession as a method by which this requirement can be met. Consequently, since appellant was charged and convicted of theft under section 45-6-301(1)(a), MCA, which in essence is knowingly obtaining or exerting unauthorized control over property of the owner to deprive said owner of his property, Champagne's mere possession of the stolen property falls within the same

statutory subsection of theft.

This is not a correct reading of the statute. The theft statute defines four ways the crime can be committed. Appellant was convicted of theft under section 45-6-301(1)(a), MCA, which contemplates actual taking. Champagne, on the other hand, could only be convicted of theft under section 45-6-301(3)(c), MCA, which is essentially possession of stolen property. This subsection states:

> "(3) A person commits the offense of theft when he purposely or knowingly obtains control over stolen property knowing the property to have been stolen by another and:
>
> ". . .
>
> "(c) uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property."

These are statutorily distinct crimes. Possession of stolen property under section 45-6-301, MCA, supplants the old possessory statute, section 94-2721, R.C.M. 1947. All theft-related offenses are described in section 45-6-301, MCA. However, commission of one of the offenses does not make one responsible for all other crimes outlined in the statute.

In support of his contention that Champagne's possession of stolen property makes him accountable, appellant cites State v. Standley (1978), 179 Mont. 153, 586 P.2d 1075. The cases are clearly distinguishable. In Standley we held that one of the State's witnesses was an accomplice whose testimony must be corroborated. However, the defendant was charged with possession of stolen property, not theft. The State's witness could have been charged with the same crime since he was knowingly holding stolen property, which he eventually appropriated for his own use.

-7-

Finally, in State v. Wirtanen (1965), 146 Mont. 268, 406 P.2d 376, this Court specifically held that a thief could not be an accomplice of a receiver of stolen property. State v. Mercer (1943), 114 Mont. 142, 133 P.2d 358; State v. Keays (1934), 97 Mont. 404, 34 P.2d 855. In coming to this conclusion, we determined that the rule was predicated on the separate offense theory which states that larceny and receiving stolen property are separate and distinct crimes.

Secondly, appellant contends that the testimony of Champagne and Thumm, who he asserts are accomplices, was not corroborated. Section 46-16-213, MCA, reads:

> "A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

In addition, there is a wealth of case law which enunciates principles best summarized in State v. Kemp (1979), ____ Mont. _____, 597 P.2d 96, 99, 36 St.Rep. 1215, 1218, and recently recited in State v. Forsyth (1982), ____ Mont. _____, 642 P.2d 1035, 1038-1039, 39 St.Rep. 540, 544:

> ". . . First of all, the sufficiency of such evidence is a question of law. [Kemp citation omitted.] To be sufficient, it must show more than that a crime was in fact committed or the circumstances of its commission. It must raise more than the suspicion of the defendant's involvement or opportunity to commit the crime charged. But the evidence need not be sufficient by itself to support the defendant's conviction or even to make out a prima facie case against him. It may be circumstantial and can come from the defendant or his witnesses. [Kemp

citation omitted.] Under section 46-16-213, MCA, it must be evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense."

Since we have determined that Champagne is not responsible for appellant's crimes, his testimony need not be corroborated. Furthermore, we believe the testimony of Thumm, who was clearly an accomplice, was sufficiently corroborated.

Essentially, Thumm testified that (1) he was at a party with the appellant prior to the burglary and theft; (2) he left with appellant in Champagne's car and appellant was driving; (3) they both went to Scheel's Hardware; (4) appellant drove the car through a window of the store; (5) appellant left the car and entered the store; (6) appellant returned with a bagfull of handguns; and (7) they both returned to the party.

The following evidence tends to connect the appellant with the crime, thus providing adequate corroboration of Thumm's testimony. Champagne testified that both appellant and Thumm were at the party. Carmen Komeotis testified that appellant was at the party. Champagne also stated that he lent his car to appellant. Furthermore, the damage done to the car matched the damage done to the store and physical evidence found at the scene of the crime was sufficiently connected to the vehicle. This was supported by the testimony of Detective Larry Renman. Detective Renman also testified that he believed the car was rammed into the window so appellant could gain entry to the store. Evelyn Komeotis testified that she heard appellant in her home the

day after the crimes were committed, and Champagne had two handguns which he indicated were fruits of the crime, given in payment for damage to his vehicle. Finally, Champagne testified that he had a "good idea" the guns were stolen and from where they were stolen.

Thirdly, the appellant asserts that the testimony of Patrick L. Ryan, probation and parole officer for the State of Montana, regarding appellant's prior conviction was hearsay and thus not competent proof of such convictions.

In State v. Cooper (1971), 158 Mont. 102, 489 P.2d 99, this Court held that in order to present evidence of a prior conviction in a sentencing proceeding there must be compe-tent proof that the defendant in fact suffered the prior conviction. Moreover, the Montana Rules of Evidence exempt sentencing proceedings from evidentiary constraints. Rule 101(c)(3), Mont.R.Evid. Persistent felony offender hearings are part of the sentencing proceeding. Policy for this is sound, as the court wants to examine complete historical data and potential of the defendant before it pronounces sentence.

The testimony of Ryan, although arguably hearsay, was properly admitted during the persistent felony offender hearing pursuant to Rule 101(c)(3) of the Montana Rules of Evidence. Furthermore, it was competent proof that the appellant was the same individual who was convicted of the prior felony. Ryan testified that he supervised one Anthony Martin LaMere when he served a suspended sentence on proba-tion for a felony theft committed in 1977. He further testified that the same person is the individual convicted of the Scheel's burglary and theft.

Affirmed.

_____
                  Chief Justice

We concur:

_____

_____

_____

_____
                  Justices

-11-