No. 82-472

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

THE STATE OF MONTANA,

        Plaintiff and Respondent,

    -vs-

CHARLES PRESTON HAMMONS,
a/k/a C.P. HAMMONS,

        Defendant and Appellant.

Appeal from:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, The Honorable
Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        Sverdrup & Spencer, Libby, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        William A. Douglas, County Attorney, Libby, Montana

Submitted on Briefs:  March 10, 1983

Decided:  June 9, 1983

Filed: JUN 9 1983

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant appeals from a conviction by a jury in Lincoln County, Montana, of theft, a felony. We affirm the conviction.

During the night of February 28 - March 1, 1982, defendant and four other persons were drinking and riding around the Libby area of Lincoln County. Robert DeWayne Anderson was driving his pickup. Tracy Anderson, James Hammons, Lisa Gostnell, and the defendant, C.P. Hammons, were passengers. Tracy Anderson suggested that they go to the "Buck" Jordan residence to steal old car batteries to sell for beer and gasoline money.

When they arrived at the Jordan residence, which is located in an isolated area near Libby, Robert Anderson and James Hammons headed for the house. Tracy Anderson and the defendant started up the hill where the batteries were. While Tracy and defendant were on the hill trying to steal the batteries and "goofing around with the dog," Robert Anderson and James Hammons entered the residence through a kitchen window and began to remove numerous items from the house. The defendant admitted seeing Robert Anderson and James Hammons going through the window of the house. Lisa Gostnell stayed outside, but helped load some of the property removed by Robert Anderson and James Hammons into the truck.

Defendant denied going into the house himself. He testified that the plan to steal the batteries was abandoned when Tracy Anderson and he discovered that they were too heavy to bring down the hill to Robert Anderson's pickup. Defendant admitted seeing someone put deer horns into the truck and seeing Tracy Anderson put some brass into the back of the pickup. Both Robert Anderson and James Hammons

2

testified that they saw the defendant in the bedroom of the house.

Norman "Buck" Jordan testified that, among other things, two "Old Timer" pocket knives were stolen in the burglary. One was turned over to a Sheriff's Deputy by James Hammons. The other pocket knife was in defendant's possession when he was arrested on the evening following the burglary. Jordan testified that the knife found in the defendant's possession was stolen from a gun rack in the bedroom of his home. The defendant testified that he got the knife from the dashboard of Robert Anderson's pickup after the burglary had been completed.

It is undisputed that Robert Anderson and James Hammons took numerous items from the house, including pistols, knives, tools, a knapsack, and some relatively rare currency. The aggregate value of the stolen property far exceeds $150.

The State prosecuted the defendant for theft on the theory that he either obtained or exerted unauthorized control over this property or was accountable for the conduct of Robert Anderson and James Hammons. James Hammons, the defendant's brother, testified against defendant under the terms of a deferred prosecution agreement. Lisa Gostnell testified under a grant of immunity from prosecution. Robert Anderson received no favors in exchange for his testimony.

The court submitted the case to the jury on charges of burglary, felony theft, and misdemeanor theft. The jury acquitted the defendant of the burglary charge, but found him guilty of the offense of theft, a felony. He was sentenced to four years imprisonment at the State Prison. From this verdict, the defendant appeals.

The issues presented on appeal are:

3

1. Was the accomplice testimony of Robert Anderson, James Hammons, and Lisa Gostnell adequately corroborated by independent evidence?

2. Was the felony theft conviction sufficiently supported by the evidence?

Appellant argues that there are only two pieces of evidence that the jury could consider corroborative: his own testimony that he attempted to carry some batteries down the hill and the fact that Buck Jordan's knife was found in his possession. He argues that neither supplies corroboration for the accomplice testimony since (1) defendant was charged with theft of numerous other items, not battery theft or attempted battery theft; (2) defendant provided an explanation for possessing the knife; and (3) his acquittal of the burglary charge establishes that the jury believed his testimony as to how he got the knife. The defendant testified that he got the knife from the dashboard of Robert Anderson's pickup and that he was not aware that any knives were taken from the Jordan place.

Accomplices Robert Anderson and James Hammons testified that the defendant participated in the burglary and the theft. Robert Anderson testified that he and James Hammons ransacked the Jordan house, that James Hammons unlocked the back door of the house to let the defendant in, and that he saw the defendant in the bedroom of the house.

James Hammons testified that he took one "Old Timer" pocket knife and one large Bowie knife from the Jordan residence, and that he saw the defendant in the bedroom during the burglary.

Lisa Gostnell testified that all four men (the Hammons brothers and the Anderson brothers) participated in the decision to steal Jordan's property. She stated that in

4

execution of that plan, Robert Anderson and James Hammons entered the house while the defendant and Tracy Anderson went up a nearby hill to get car batteries.

Since Lisa Gostnell, Robert Hammons and James Anderson all participated in removal of property from Jordan's house, they are accomplices in the offense of theft. To support defendant's conviction, their testimony must be corroborated by other evidence. Section 46-16-213, MCA, states:

> "A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The quantum and character of proof required to corroborate accomplice testimony was summarized in State v. Kemp (1979), 182 Mont. 383, 387, 597 P.2d 96, 99:

> "To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. State v. Keckonen (1938), 107 Mont. 253, 263, 84 P.2d 341, 345. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. State v. Gangner (1957), 130 Mont. 533, 535, 305 P.2d 338, 339. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a prima facie case against him. State v. Ritz (1922), 65 Mont. 180, 186, 211 P. 298, 300; State v. Stevenson (1902), 26 Mont. 332, 334, 67 P. 1001, 1002. Corroborating evidence may be circumstantial (State v. Harmon (1959), 135 Mont. 227, 233, 340 P.2d 128, 131) and can come from the defendant or his witnesses. State v. Phillips (1953), 127 Mont. 381, 387, 264 P.2d 1009, 1012."

As stated more recently in State v. Forsyth (1982), ____ Mont. ____, 642 P.2d 1035, 1039, 39 St.Rep. 540, 544, quoted in State v. Lamere (1983), ____ Mont. ____, 658 P.2d 376, 380, 40 St.Rep. 110, 115:

> "Under section 46-16-213, MCA, it must be evidence which in itself and without the aid of the testimony of the one responsible or legally

5

accountable for the same offense tends to connect
the defendant with the commission of the offense."

Corroborative evidence "need only tend to connect the defendant with the commission of the offense." State v. Morigeau (1982), ____ Mont. ____, 656 P.2d 185, 187, 39 St.Rep. 2311, 2314.

With these principles in mind, we examine the corroborative evidence that supports the accomplice testimony. Defendant, by his own testimony, corroborated his accomplices' statements. He admitted knowledge of the plan "to go get some batteries" from the Jordan place. He saw Robert Anderson and James Hammons climbing through the window into the Jordan residence. He saw stolen property being loaded into the back of the pickup. He abandoned his own efforts to steal batteries after he discovered they were too heavy to bring down the hill. He admitted having possession of the stolen knife. These admissions by defendant tend to connect the defendant with the commission of the offense of theft.

Buck Jordan also corroborated Anderson's and Hammons' testimony that the defendant participated in the burglary and the theft. Jordan testified that two "Old Timer" pocket knives were taken from his house and that the knife that the defendant possessed at the time of his arrest was stolen from a gun rack in Jordan's bedroom.

The strongest corroborating evidence was defendant's possession of the stolen pocket knife. Possession of the "Old Timer" knife certainly connected the defendant to the crime. It constituted circumstantial evidence that the jury had a right to consider. State v. Laubach (1982), ____ Mont. ____, 653 P.2d 844, 846, 39 St.Rep 2074, 2076. Defendant's possession of the stolen knife was sufficient as a matter of

6

law to corroborate the accomplice testimony. "Whether the defendant's explanation was sufficient to explain away the possession was a factual question for the jury." State v. Rose (1980), ____ Mont. ____, 608 P.2d 1074, 1078, 37 St.Rep. 642, 647.

We hold that there was sufficient, independent evidence to satisfy the statutory requirements and to corroborate the testimony of Anderson, Hammons and Gostnell.

Defendant's next contention is that the evidence does not sufficiently support his conviction of felony theft. Section 45-6-301, MCA defines theft and related offenses. That statute defines four ways the offense of theft can be committed, including an actual taking (section 45-6-301(1), MCA) and possession of stolen property (section 45-6-301(3), MCA).

The amended information charged the defendant with alternative counts of felony burglary and theft. All the items taken from the Jordan residence, outbuildings and property were listed on the information. There is no dispute that defendant's brother and companion burglarized the Jordan residence and that the property taken exceeded $150 in value.

Defendant was charged and prosecuted for theft on alternate theories that he either took the property himself or was legally accountable for the conduct of his accomplices. Section 45-2-302, MCA, provides in part that:

"A person is legally accountable for the conduct of another when:

" . . .

"(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense."

7

We must therefore assess the sufficiency of the evidence to show whether or not defendant aided, agreed, or attempted to aid his brother and Robert Anderson in the planning or commission of the theft. In assessing the sufficiency of the evidence, this Court must give it all of the probative effect toward conviction that it will support. State v. Fitzpatrick (1973), 163 Mont. 220, 227, 516 P.2d 605, 610.

We have long adhered to the principle that more than mere presence is necessary to establish criminal responsibility. State v. McComas (1929), 85 Mont. 428, 433, 278 P. 993, 995. A reasonable juror could be convinced of defendant's guilt by evidence other than the mere fact that he was present at the Jordan place when the offenses occurred. The defendant agreed with the other three men to steal Jordan's property. He may or may not have entered the house, but he definitely received a fruit of the crime. Robert Anderson testified that while they were in jail, the defendant told him that "of all the stuff that we took out of the house, all he had gotten was a knife." This statement after arrest strongly suggests more than mere presence at the scene of the crime.

The evidence supports the conclusion that the defendant was part of the common criminal enterprise, which resulted in felony theft. The fact that he abandoned his specific intent to steal Jordan's batteries does not vitiate his attempts to aid in the planning or commission of the theft. The fact that the weight of the batteries caused appellant to abort his attempt to steal them before his companions finished ransacking the house does not nullify his participation in the commission of the offense of theft. The fact that he did not enjoy a proportionate share of the spoils is also unconvincing.

8

In State ex rel. Murphy v. McKinnon (1976), 171 Mont. 120, 556 P.2d 906, we stated that failure to restrain companions who were committing a crime within defendant's presence was not sufficient evidence of defendant's criminal design and encouragement of the offense. We noted that a more active role was necessary in order for a person to be charged under the accountability statute.

In State v. Lamere (1983), ____ Mont. ____, 658 P.2d 376, 40 St.Rep. 110, appellant was not permitted to transfer legal accountability for his crimes to a companion who received property stolen by appellant from a hardware store. Appellant had gained entry to the store by driving his companion's car through a large window. We concluded that where there was no evidence that the companion had any prior knowledge or involvement with appellant's actions, he was not responsible for the acts of appellant. Since the companion did not know about the appellant's plan when he relinquished the car to him, he did not cause the appellant to commit the crimes, nor did he aid or abet the appellant to facilitate commission of the crimes. Lamere, 658 P.2d at 379, 40 St.Rep. at 113.

Here, appellant had prior knowledge of the group's plan to steal Jordan's property. With knowledge that his companions were in the process of burglarizing the residence, appellant attempted to steal the batteries. This affirmative conduct on appellant's part constitutes more than mere presence. Appellant's active participation and attempts to aid in the effectuation of the group's plan exceeded negative acquiescence or mere failure to restrain.

We find the evidence sufficient to hold the appellant legally accountable for the actions of his companions in

crime.  When viewed in a light most favorable to the State, the evidence shows that the defendant is legally accountable under section 45-2-302(3), MCA, for the conduct of his brother and Robert Anderson.  Both before and during the commission of the theft, defendant aided, agreed and attempted to aid his brother and Anderson in both the planning and commission of the offense of theft.

The defendant argues that his acquittal of the burglary charge implies that the jury must have concluded that his possession of the knife was innocent.  The defendant need not have been found to have personally taken the knife to be guilty of theft.  The jury could have entertained a reasonable doubt as to whether the defendant actually entered the building, thereby acquitting him of the burglary charge, and yet also have concluded that the defendant was guilty of theft because he was accountable for the conduct of his brother and Anderson.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices